IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01986-PAB

TIMOTHY L. JORDAN,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

**ORDER**
_____

      This matter comes before the Court on plaintiff Timothy L. Jordan's complaint

[Docket No. 1], filed on August 20, 2009.  Plaintiff seeks review of the final decision of

defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability

insurance benefits and supplemental security income under Titles II and XVI of the

Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has

jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

      Plaintiff filed an application for disability benefits on March 3, 2005, alleging that

he had been disabled since January 19, 2005.  After an initial administrative denial of

plaintiff's application, an administrative law judge ("ALJ") held a hearing on November

---

[1]The Joint Case Management Plan indicates that "[p]laintiff wants oral argument if the court requests it."  Docket No. 14 at 3, ¶ 9.  The Commissioner does not request oral argument.  *See id.*  The Court concludes that this appeal can be resolved based on the parties' filings.

15, 2007.  In a decision dated February 6, 2008, the ALJ denied plaintiff's claim.

Plaintiff filed a second claim for disability on April 10, 2008, a claim that had yet to be

resolved when the Appeals Council denied review of the ALJ's February 6 decision on

June 19, 2009.  Plaintiff filed the present appeal on August 20, 2009.

On October 26, 2009, the Court granted [Docket No. 5] the Commissioner's

unopposed motion to remand [Docket No. 4] this case pursuant to sentence six of 42

U.S.C. § 405(g) due to an inaudible hearing recording.  When the case returned to a

different ALJ on remand, plaintiff's April 10, 2008 application had been denied

administratively.  Because the two applications raised the same issues, the ALJ

consolidated them and held a hearing on January 13, 2010.  In a decision dated April 7,

2010, the ALJ denied plaintiff's applications for benefits.

The ALJ concluded that plaintiff had the "following severe impairments: bronchial

asthma, diabetes mellitus, diabetic neuropathy, sleep apnea, tendon tear right shoulder,

osteoarthritis of the knee."  R. at 24.  The ALJ found that these impairments, alone or in

combination, did not meet one of the regulations' listed impairments.  R. at 24.  The

ALJ determined that plaintiff retained the residual functional capacity ("RFC") to

"perform light work as defined in 20 CFR [§] 404.1567(b) except that [he] cannot

perform more than occasional overhead work with his right upper extremity and the

claimant cannot be exposed to extremely cold working conditions or industrial air born

[sic] pollutants."  R. at 25.  Based upon this RFC and in reliance on the testimony of a

vocational expert ("VE"), the ALJ concluded that "jobs . . . exist in significant numbers in

the national economy that the [plaintiff] can perform."  R. at 30.

Upon remand of a case, the ALJ's decision is the final decision of the

2

Commissioner.  *See* R. at 10.  Plaintiff filed exceptions to the decision with the Appeals Council, who declined to assume jurisdiction on October 25, 2010.  *See id.*  On March 17, 2011, the Court granted the Commissioner's unopposed motion to reopen this case. *See* Docket No. 9.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a

ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

4

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ failed to include in his RFC all of the limitations supported by the record evidence, including that plaintiff would have to regularly miss work for allergy and asthma shots; failed to adequately articulate the weight given to treating source opinions and engaged in impermissible selective review of the record; and did not properly consider a finding of disability by the Department of Veterans Affairs (the "VA").

### *1. Inclusion of Limitations in the RFC*

Plaintiff argues that, instead of restricting plaintiff only from exposure to "extreme cold" and "airborne industrial pollutants," the RFC should have incorporated restrictions referenced in the opinions of Dr. Kiran Viramgama and nurse practitioner Debra

Walters, namely, "temperature extremes, noise, dust, vibration, humidity/wetness, hazards such as machinery, heights, fumes, odors, chemical and gases" and "smoke, dust or pollen."  Docket No. 17 at 9.  It is far from clear that "airborne industrial pollutants" does not already include these limitations or that, even assuming they were excluded, the record evidence required the ALJ to include these more specific limitations.

For instance, the Court notes that Dr. Viramgama's temperature restriction was limited only to "cold" air.  *See* R. at 71.  And Nurse Walters' indication that "temperature extremes" could exacerbate plaintiff's asthma was found in a form which had "temperature extremes" as a potential limitation without any specification of whether plaintiff should avoid hot as well as cold air.  *See* R. at 1084; *see also* R. at 73 (where Dr. Viramgama notes that, "[g]enerally, the hot weather has less exacerbated [plaintiff's] asthma"); R. at 133 (where, on December 14, 2004, Dr. Paul M. Mauriello notes "cold intolerance"); R. at 818 (indicating on a May 15, 2008 Physical Residual Functional Capacity Assessment form that plaintiff should "avoid concentrated exposure to "extreme cold" with no restriction on exposure to "extreme heat"); *but see* R. at 192 (indicating on a May 10, 2005 Physical Residual Functional Capacity Assessment form that plaintiff should "avoid concentrated exposure" to, *inter alia*, both "extreme cold" and "extreme heat").  Moreover, Nurse Walters' notation regarding "environmental limitations" fails to differentiate between the different aggravating factors.  *See* R. at 1084.  There is no explanation, or any record evidence, that "noise," "vibration," or "heights," *id.*, would aggravate plaintiff's condition.  In any event, the Court finds that the

6

record reveals that the ALJ's failure to include the more specific limitations in the RFC, if error at all, was harmless.

Plaintiff's counsel posed a hypothetical question to the VE which not only included these limitations on exposure to "temperature extremes either hot or cold, dust, humidity, wetness, fumes, odors, chemicals and gases including strong perfumes or things of that sort," but limited plaintiff to "no exposure" to these things.  R. at 1110-1111.[2]  The VE testified that, if limited to "no exposure," plaintiff would no longer be able to perform the three positions identified by the VE as consistent with the ALJ's RFC. However, plaintiff would be capable of performing the positions of dispatcher and surveillance system monitor.

Plaintiff contends that the VE testified that there would only be 30 dispatcher positions in Colorado, *see* Docket No. 17 at 14, n. 2, but the VE testified that, after reducing the number of positions that would be suitable pursuant to the hypothetical, there would nationally be "about 30 and in Colorado we would be looking at about 550 positions."  R. at 1113.  Of those 550 positions, approximately 150 dispatcher positions would be within 50 miles of plaintiff's home.  *See* R. at 1117.  *See* R. at 1113.[3]  It therefore seems clear that "30" refers to 30,000 positions in the national economy.

Plaintiff further argues that the VE testified that only a handful of surveillance

---

[2]Plaintiff does not indicate why he believes the opinions of Dr. Viramgama and Nurse Walters require absolutely no exposure to any of these things.  *See* R. at 1084 (where Nurse Walters opines that these irritants "can potentially aggravate asthma").

[3]The VE further testified that telemarketing positions would be available under the limitations presented in the hypothetical, but then agreed with the ALJ that such a position would be inappropriate for an individual who suffered coughing fits.  *See* R. at 1117.

system monitor positions might be available under the hypothetical.  In fact, the VE

testified that there would be 8,500 surveillance system monitor positions nationally and

about 250 in Colorado under counsel's hypothetical.  *See* R. at 1117-18.  Of these,

approximately 35 positions would be within 50 miles of plaintiff's home.  Although the

VE stated that the position as defined in the Dictionary of Occupational Titles refers to

government positions, of which there would only be a handful of positions in Colorado,

the numbers were based on the fact that there are many non-governmental surveillance

system monitor positions referenced in "all of the literature and numbers and census

codes."  R. at 1121.

The Court has no difficulty concluding that these positions exist in significant

numbers for purposes of the step five analysis.  The Tenth Circuit "has never drawn a

bright line establishing the number of jobs necessary to constitute a 'significant

number.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  Rather, "each case

should be evaluated on its individual merits."  *Id.*  Considerations include: "the level of

claimant's disability; the reliability of the vocational expert's testimony; the distance

claimant is capable of travelling to engage in the assigned work; the isolated nature of

the jobs; the types and availability of such work, and so on."  *Id.* (quoting *Jenkins v.

Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).  "'The decision should ultimately be left to

the [ALJ's] common sense in weighing the statutory language as applied to a particular

claimant's factual situation.'" *Id.* (quoting *Jenkins*, 861 F.2d at 1087).  In making that

determination, however, the question is whether plaintiff would be able to "engage in

any other kind of substantial gainful work which exists in the *national* economy,

regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A) (emphasis added).  If there is nothing about the claimant's disability that prevents him from accessing jobs in the national economy, the national statistics remain the relevant ones.  *See Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (noting that "while . . . travel to and from work is a factor to be considered" when assessing the availability of work, "it refers to intrinsic factors concerning plaintiff's condition, not extrinsic factors such as where plaintiff has chosen to live in relation to any identified regional jobs"); *see Lopez Diaz v. Sec'y of Health, Educ. and Welfare*, 585 F.2d 1137, 1140 (1st Cir. 1978) ("A person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience.  Disability insurance is not available to fund his decision to live far from available jobs."); *Cole v. Barnhart*, 293 F. Supp. 2d 1234, 1244 n.1 (D. Kan. 2003) ("'[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy – not just a local area.'") (quoting *Gravitt v. Apfel*, 185 F.3d 874 (table), 1999 WL 476026, at *2 (10th Cir. July 9, 1999).

Plaintiff does not identify anything about his condition that would render any of these jobs that exist outside of a 50-mile radius from his home unavailable to him.  The Court does not believe that an ALJ, upon remand, could reasonably conclude on this record that nearly 39,000 positions nationally and 800 in Colorado does not constitute a significant number.  Consequently, the Court finds that, although plaintiff is correct that

these were not the positions upon which the ALJ ultimately relied, the testimony regarding their availability to an individual with the RFC proffered by plaintiff's counsel renders their omission from the ALJ's RFC harmless. *Cf. Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (error is harmless where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

Plaintiff also contends that the RFC should have included a limitation related to absenteeism caused by plaintiff's need to get shots for his allergies and asthma. Plaintiff, who lives in Florence, Colorado, testified that he must travel to Pueblo, Colorado at least five times each month to receive these shots.  R. at 1094.[4]  Plaintiff contends that this treatment would result in a half-day absence from work for each visit to Pueblo.  As an initial matter, plaintiff does not indicate whether such shots must be administered during a time of day or week that would preclude working full-time.  In any event, defendant points out, *see* Docket No. 20 at 19, and plaintiff does not refute, *see* Docket No. 21 at 1, that plaintiff could receive these shots closer to his home, but chooses not to.  The Court, therefore, concludes that it was not erroneous for the ALJ to omit any limitation in the RFC resulting from the time it would take plaintiff to receive shots for his allergies and asthma.

---

[4]The distance between Florence, Colorado and Pueblo, Colorado is approximately 34 miles.  *See Hall v. Union Pacific R.R. Co.*, 2006 WL 1041718, at *2 (D. Colo. April 19, 2006) (taking judicial notice of distance between Denver, Colorado and Cheyenne, Wyoming); *see also Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1218 n.2 (10th Cir. 2007).

### 2. *Weighing the Medical Evidence and Selective Review*

Plaintiff contends that the ALJ did not sufficiently articulate and explain the

weight she gave to treating source opinions.  The extent of plaintiff's argument, other

than inclusion of a long excerpt from *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th

Cir. 2004), is as follows: "The opinion by ALJ Peggy Ball is not sufficiently specific to

make clear to subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinions and the reason for that weight."  Docket No. 17 at 16.

Plaintiff fails to identify any medical opinions other than those cited by the ALJ that

support any additional limitations.  Rather, it appears that plaintiff is arguing that the

ALJ should have given the opinions of Dr. Viramgama and Nurse Walters greater or

controlling weight.  As discussed above, the inclusion of "no exposure" to any of the

irritants referenced by these healthcare providers does not undermine the ALJ's

conclusion that plaintiff is not disabled.  Plaintiff's argument that the ALJ engaged in

impermissible "selective review" of the record is another restatement of his argument

that the ALJ failed to include the additional limitations referenced in the record.  *See*

Docket No. 17 at 16-17 ("[T]he ALJ's RFC omits relevant limitations precluding

exposure to extremes of heat, noise, dust, vibration, humidity/wetness, hazards such as

machinery, heights, fumes, odors, chemicals and gases.").

### 3. *Veterans Affairs Determination*

_____Finally, plaintiff contends that the ALJ did not appropriately weigh the

determination by the VA that plaintiff was "permanently and totally disabled due to [his]

service-connected asthma."  R. at 396-97 (concluding that the asthma was 60%

11

disabling "which ultimately required disability retirement from employment").  Pursuant

to the Social Security regulations, "[e]vidence is anything you or anyone else submits to

us or that we obtain that relates to your claim," which "includes . . . [d]ecisions by any

governmental or nongovernmental agency about whether you are disabled . . . ."  20

C.F.R. § 416.912(b)(5).  Therefore, plaintiff is correct that the ALJ was required to

consider the VA's determination.  *See Baca v. Department of Health & Human Servs.*, 5

F.3d 476, 480 (10th Cir.1993).

The ALJ, however, did describe the VA's conclusions in her opinion, stated that

she considered them, and concluded that such evidence was "not sufficient to establish

disability through the Social Security Administration."  *See* R. at 27-28.  The record the

ALJ reviewed included not only the VA's determination but also medical records from

the VA.  *See* R. at 196-285; *see also Jones v. Barnhart*, 53 F. App'x 45, 47 (10th Cir.

2002) ("Just as the former determinations did not preclude Mr. Jones from attempting to

obtain disability benefits from the Commissioner, neither did they compel the

Commissioner to automatically grant those benefits.  Simply put, the workers'

compensation and veterans administration proceedings are entirely different and

separate from a claim under the Social Security Act, with different parties, different

evidentiary standards, and different bodies of law governing their outcomes."); *Pruett v.*

*Apfel*, 153 F.3d 728 (table), 1998 WL 380506, at *1 (10th Cir. July 08, 1998) ("In [the

ALJ's] decision, he analyzed the treatment records of VA physicians and stated that the

conclusion of nondisability was made after a consideration of the entire record.");

*Justice v. Chater*, 86 F.3d 1166 (table), 1996 WL 270965, at *2 (10th Cir. May 22,

1996) ("Although the Secretary is required to consider another agency's disability determination, the other agency's determination has been made based on different rules, and is not binding on the Secretary.  Here, the ALJ fully considered the Veterans Administration's rating in making his decision.") (citations omitted); 20 C.F.R. § 416.904 (providing that a "decision by any nongovernmental agency or any other governmental agency about whether [a claimant is] disabled . . . is based on its rules and is not [the Commissioner's] decision about whether [a claimant is] disabled . . . .  [The Commissioner] must make a disability . . .determination based on social security law. Therefore, a determination made by another agency that [a claimant is] disabled . . . is not binding on [the Commissioner].").[5]

Plaintiff "argues that the ALJ should have given the VA's rating more weight, but he 'has not pointed to any specific factual finding or evidence in the [VA's] disability determination that should have changed the [ALJ's] decision.'" *Breneiser v. Astrue*, 231 F. App'x 840, 845 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).[6]  "The ALJ was not required to adopt the VA's conclusion," and,

---

[5]*Kralicek v. Apfel*, 229 F.3d 1164 (table), 2000 WL 1153288, at *3 (10th Cir. Aug. 15, 2000) ("The ALJ referenced the VA's disability determination at the hearing; documentation of the determination was in the record; and, in his decision, the ALJ stated that the conclusion of nondisability was made after a consideration of the entire record.  The fact that the ALJ drew a different conclusion concerning Mr. Kralicek's condition does not constitute legal error.  Although it would have been preferable for the ALJ to be more explicit in his discussion of the VA disability rating, the lack of detail is not reversible error under the circumstances presented by this case.") (citations omitted).

[6]*Cf. Hackett*, 395 F.3d at 1172-73 (citations omitted):
Plaintiff has not pointed to any specific factual finding or evidence in the state disability determination that should have changed the Appeals Council's decision.  To the extent that the state agency differed from the

because the ALJ's consideration of the VA's decision was otherwise sufficient, the Court "reject[s] this claim of error."  *Id.*

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is AFFIRMED.

DATED March 30, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

ALJ in assessing credibility, there is of course no reason why the Appeals Council must always adopt the state agency's view over that of the ALJ. Plaintiff complains that the Appeals Council's reference to the state proceeding was perfunctory – the Appeals Council wrote only that it had considered the additional evidence submitted "but concluded that neither the contentions nor the additional evidence provides a basis for changing the Administrative Law Judge's decision."  Yet, our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.  We reject this claim of error.

14